UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff,*<br><br>v.<br><br>TRAVIS MCCOY.<br><br>*Defendant.* | No. 3:18-cr-132 (MPS) |

**RULING ON MOTION TO REDUCE SENTENCE**

Defendant Travis McCoy has filed a motion under 18 U.S.C. § 3582(c)(1)(A) asking that the Court reduce his 156-month sentence by at least 12 months and add a special condition of one year of home confinement to his conditions of supervised release. ECF No. 81. He argues that a reduction is warranted due to (1) risks to his mental and physical health from continued incarceration, (2) the poor conditions at FCI Danbury, and (3) evidence of his rehabilitation. *Id.* The government filed a memorandum in opposition, ECF No. 83, to which Mr. McCoy filed a reply brief, ECF No. 92. I have carefully considered these materials and the exhibits attached thereto. For the reasons that follow, the motion is denied.

**I.  Background**

On June 28, 2017, Mr. McCoy was arrested on a criminal complaint charging him with production of child pornography in violation of 18 U.S.C. § 2251(a) and enticement of a minor to engage in illegal sexual activity in violation of 18 U.S.C. § 2422(b). On June 27, 2018, he waived indictment and pled guilty to an information charging him with enticement of a minor to engage in illegal sexual activity in violation of 18 U.S.C. § 2422(b). On September 24, 2018, I sentenced Mr. McCoy to 156 months imprisonment. ECF No. 71. In doing so, I imposed a non-

guidelines sentence because I found that a guidelines sentence would be substantially greater than necessary to carry out the purposes of sentencing, noting the concerns about related guidelines expressed in *United States v. Dorvee*, 616 F.3d 174, 188 (2d Cir. 2010). The sentence I imposed included a long incarceration component and a life term of supervised release "aimed at reflecting the seriousness of the offense and protecting the public and deterring the defendant from committing future crimes against minors." ECF No. 71.

On August 5, 2020, Mr. McCoy filed his first motion for a sentence reduction. Mr. McCoy argued that his Autism Spectrum Disorder ("ASD") placed him at higher risk of contracting COVID-19 because it "renders him less able to follow a program of social distancing, masking, and hand washing that are necessary to remain healthy…." ECF No. 73 at 16. The Court denied that motion, holding that Mr. McCoy had "not demonstrated that he is in the class of medically vulnerable inmates for whom COVID-19 presents an increased risk of severe illness," and that "the § 3553(a) factors weigh[] against release in this case." ECF No. 80 at 4. At the time, Mr. McCoy had served 35 months in custody. *Id.* at 2.

On June 27, 2023, Mr. McCoy filed a second motion for a sentence reduction, *pro se*, asking that the Court reduce his sentence by "at least 12 months"[1] and add a special condition of one year of home confinement to his supervised release. ECF No. 81. He argues that compassionate release is warranted due to (1) risks to his physical and mental health, (2) poor conditions at FCI Danbury, and (3) his continued progress in rehabilitation. *Id.* The Government filed a brief in opposition to Mr. McCoy's motion on August 3, 2023. ECF No. 83. Mr. McCoy replied to the Government's opposition on October 25, 2023. ECF No. 92.

---

[1] The first page of Mr. McCoy's motion requests a reduction of "at least 12 months." ECF No. 81 at 1. Subsequent pages request a 24-month reduction of his sentence. ECF No. 81 at 9, 10, 13, 14; ECF No. 92 at 8.

Mr. McCoy, who remains incarcerated at FCI Danbury, has now served 82 months of his 156-month sentence. His home detention eligibility date is July 5, 2027, and his projected release date is January 5, 2028. ECF No. 81-3 at 5.[2]

## II. Legal Standard

Section 3582(c)(1)(A) authorizes courts to modify terms of imprisonment as follows:

> The court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A). Before the First Step Act was enacted in 2018, this provision did not permit the defendant to file a motion with the Court, leaving the decision whether to file a motion seeking an order of "compassionate release" exclusively to the Director of the Bureau of Prisons. The First Step Act amended the statute to the text shown above.

Until recently, the U.S. Sentencing Commission policy statement applicable to Section 3582(c)(1)(A), Policy Statement § 1B1.13, did not take account of the defendant's right to file a motion with the Court after exhausting administrative remedies. *United States v. Brooker*, 976 F.3d 228, 235 (2d Cir. 2020). Therefore, the Second Circuit concluded that Policy Statement § 1B1.13 was "clearly outdated," and held that it applied only to motions "brought by the [Bureau of Prisons] Director." *Id.* at 236. In cases brought by defendants, Policy Statement 1B1.13 was "not binding but … rather, helpful guidance." *United States v. Almontes*, No. 3:05-CR-00058 (SRU), 2020 WL 1812713, at *3 (D. Conn. Apr. 9, 2020).

---

[2] *See* https://www.bop.gov/inmateloc (BOP Register Number 26368-479).

3

As of November 1, 2023, the U.S. Sentencing Commission has updated Section 1B1.13 to "harmonize[] the Policy Statement with the [First Step Act]." *United States v. Feliz*, No. 16-CR-00809, 2023 WL 8275897, at *4 (S.D.N.Y. Nov. 30, 2023). The amendments to Section 1B1.13(a) clarify that it applies to motions brought by the defendant. *Id.* The amendments to Section 1B1.13(b) describe specific circumstances where "[e]xtraordinary and compelling reasons exist" and provide that Courts may grant compassionate release if "the defendant presents any other circumstance or combination of circumstances that … are similar in gravity to those described," U.S. Sent'g Guidelines Manual § 1B1.13(b)(5) (U.S. Sent'g Comm'n 2023).

As a result of these reforms, Section 1B1.13 now applies to cases brought by defendants, and "[t]o grant a motion for compassionate release, a court must … find that granting such relief 'is consistent with' Policy Statement 1B1.13." *Feliz*, 2023 WL 8275897, at *4 (citation omitted). Thus, I may reduce Mr. McCoy's term of imprisonment if (1) he has fully exhausted his administrative remedies or 30 days have passed from receipt of his request by the Warden, (2) I find, after considering the Section 3553(a) factors, that "extraordinary and compelling reasons warrant" a reduction of his term of imprisonment, and (3) I find that such relief "is consistent with" Section 1B1.13.

### III.  Discussion

It is undisputed that Mr. McCoy has met the exhaustion requirement. ECF No. 81-2; ECF No. 83 (declining to argue that Mr. McCoy failed to exhaust administrative remedies). As to the merits of Mr. McCoy's motion, I find that, after considering the requirements of Section 1B1.13 and the factors set forth in 18 U.S.C. § 3553(a), he has not shown that "extraordinary and compelling reasons warrant" a reduction in his sentence at this point.

#### A.  Mr. McCoy's Physical and Mental Health Conditions

First, Mr. McCoy argues that risks to his physical and mental health warrant a reduction in sentence. Mr. McCoy is diagnosed with Autism Spectrum Disorder and cardiac arrythmia. ECF No. 81 at 3; ECF No. 84-1 at 27. A blood test from September of 2022 also shows his glucose level was below the recommended range, ECF No. 84-1 at 42, which he claims is "indicative of a liver disorder," ECF No. 81 at 3.[3] Mr. McCoy argues that his preexisting conditions place him at greater risk of death or serious harm from COVID-19. He also claims that his ASD makes him "especially vulnerable to sexual exploitation in prison," because "he is easily manipulated and has issues expressing himself." *Id.*[4] And he contends that FCI Danbury is understaffed and fails to provide adequate health care. *Id.* at 6.

Under Section 1B1.13(b)(1)(A)-(C), "extraordinary and compelling reasons exist" if (1) "the defendant is suffering from a terminal illness," (2) "the defendant is … suffering from a serious physical or medical condition … that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which [he] is not expected to recover," or (3) the defendant's medical condition "requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." None of these circumstances are present here. Mr. McCoy does not have a terminal illness. Nor has he presented evidence that any of his conditions "substantially diminish" his ability to provide self-care. And Mr. McCoy does not allege that his heart arrhythmia or low glucose level "require[] long-term or specialized medical care that is not

---

[3] The Government denies that "low glucose levels on one occasion" is evidence of a liver disorder, as "there is not a single notation in the medical records from a nurse or physician expressing concern about a possible liver disorder." ECF No. 83 at 10. I agree. Mr. McCoy has not presented sufficient evidence that he has a liver disease.

[4] The Government argues that "[t]he Court … was aware of Mr. McCoy's [ASD] diagnosis when it imposed a below-guidelines sentence," and "those difficulties therefore do not constitute extraordinary and compelling reasons." ECF No. 83 at 13. However, Section 1B1.13(e) provides that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." Thus, I may consider whether Mr. McCoy's ASD warrants a sentence reduction even though I was aware of his diagnosis at sentencing.

being provided." *Id.* Finally, though Mr. McCoy claims that he has not received mental health care that might help him function better with ASD, including sex offender treatment, he has completed other mental health programming. ECF No. 81-8. Mr. McCoy has not shown that he is "at risk of serious deterioration in health or death without" additional mental health treatment.[5]

Section 1B1.13(1)(D)(i)-(iii) also provides that extraordinary and compelling reasons exist if (1) "the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority," (2) "due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death" because of the outbreak or public health emergency, and (3) "such risk cannot be adequately mitigated in a timely manner."

Mr. McCoy has not shown that these circumstances are present either. First, none of the evidence Mr. McCoy cites supports the conclusion that FCI Danbury is experiencing an ongoing outbreak of COVID-19 or that federal or state officials have declared an ongoing public health emergency. Mr. McCoy observes that FCI Danbury had "one of the worst outbreaks of COVID-19 in the federal system" in 2020. *United States v. Somerville*, 463 F. Supp. 3d 585, 588 (W.D. Pa. 2020). But FCI Danbury currently reports one open case of COVID-19. Federal Bureau of Prisons, *Inmate COVID-19 Data*, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp#lastestCovidData (last visited April 12, 2024). And, "[b]oth the federal government and the State of Connecticut issued declarations ending the COVID-19 Public Health Emergency on May 11, 2023." *Green v.*

---

[5] Mr. McCoy may be at a higher risk of abuse because of his ASD. But he has presented no evidence that he has experienced abuse while incarcerated. And he has not shown that FCI Danbury has taken insufficient steps to protect him from potential abuse. Instead, the record shows that he participated in FCI Danbury's "at risk" program and SKILLS treatment program, ECF No. 81-3 at 2; ECF No. 81-8, and he "has demonstrated social skills improvements." ECF No. 81-7 at 2.

*Caron*, No. 3:22-CV-01397 (KAD), 2023 WL 6809620, at *3 (D. Conn. Oct. 16, 2023). In addition, Mr. McCoy, along with the majority of the inmates at FCI Danbury, have been fully vaccinated. *See* ECF No. 84-1 at 94; Federal Bureau of Prisons, *Inmate COVID-19 Data*, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp#lastestCovidData (last visited April 12, 2024); *see also United States v. Gilliam*, No. 08-CR-00742, 2021 WL 5013616, at *2 (E.D.N.Y. Oct. 28, 2021) ("The vaccines have proven highly effective in preventing COVID-19 infection ... and courts have held that the 'compelling circumstances' associated with COVID-19 risk factors dissipate after a defendant receives a vaccine.").

Second, Mr. McCoy claims that his ASD, heart arrythmia, and low glucose level indicate he is at greater risk of suffering severe medical complications or death if he contracts COVID-19. His impairments are not among the medical conditions identified by the Centers for Disease Control and Prevention as those that place individuals at a higher risk of infection or death from COVID-19. Ctrs. for Disease Control & Prevention, *Underlying Medical Conditions Associated with Higher Risk for Severe COVID-19*, https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html (updated Feb. 9, 2023). Indeed, since "[a]ge is the strongest risk factor for severe COVID-19 outcomes," Mr. McCoy may be at lower risk than many. *Id.*

Finally, Mr. McCoy has not demonstrated that any risk that COVID-19 poses, given his preexisting conditions, "cannot be adequately mitigated in a timely manner." Amended Policy Statement 1B1.13(b)(1)(D)(iii). Mr. McCoy alleges that a person who was incarcerated with him died because his requests to see a pulmonologist "went ignored." ECF No. 81 at 7. And he cites an excerpt of a filing in the FCI Danbury COVID-19 class action that was before me, dated September 11, 2020, which describes understaffing at FCI Danbury during a significant COVID-

7

19 outbreak in the facility. ECF No. 81-5. Mr. McCoy's unsubstantiated description of the experience of another person, and a report that is now more than three years old, do not demonstrate that Mr. McCoy is not receiving adequate care today. Instead, the record indicates that Mr. McCoy has received care for his ASD and cardiac arrythmia. *See* ECF No. 81-8; ECF No. 84-1 at 16, 27, 29.

### B. Conditions in FCI Danbury

Next, Mr. McCoy argues that conditions at FCI Danbury, including "mold, understaffing, overcrowding, poor medical care, [and] severe prison politics," justify a sentence reduction. ECF No. 81 at 6. Mr. McCoy claims that one unit at FCI Danbury was recently condemned because of "heating problems," and another unit, which "is physically connected to [his] unit", was condemned because "there was so much black mold, leaking ceilings, falling paint chips, and other issues [that] it was deemed inhabitable." *Id.* at 5. He points to evidence that U.S. Senators Murphy and Blumenthal visited FCI Danbury in January of 2022 after "complaints about a staffing shortage and lack of coronavirus precautions," but were "denied full access" to the facility. ECF No. 81-6 at 2-3. Mr. McCoy also cites the FCI Danbury COVID-19 litigation, in which the petitioners alleged that FCI Danbury destroyed patient sick calls. ECF No. 81 at 5; ECF No. 81-5. According to Mr. McCoy, sex offenders face particularly challenging circumstances at FCI Danbury. He claims that "prison politics" mean that "sex offenders … get dictated where they can and can't sit in the chow hall (and often times have to stand and wait for a seat to open), they can't participate in certain activities and the staff often times promote[] such behaviors." ECF No. 81 at 6. He alleges that a staff member made derogatory remarks about people in the SKILLS unit, and another inmate took his own life "in part, due to the prison politics." *Id.*

8

While Mr. McCoy's allegations are troubling, they do not rise to the level of an extraordinary and compelling reason warranting a reduction in sentence. Mr. McCoy provides little evidence the conditions at FCI Danbury impacted him. *United States v. Lawrence*, No. 19-CR-00437 (AKH), 2022 WL 4000904, at *3 (S.D.N.Y. Sept. 1, 2022) ("[C]onditions universally applicable to all inmates at a given facility, including conditions instituted during the pandemic, do not give rise to extraordinary and compelling circumstances."). Mr. McCoy was not in FCI Danbury units that were condemned, and he has not alleged that he has experienced negative health consequences because of the conditions. *Cf. United States v. Batista*, No. 18-CR-00319, 2022 WL 1997173, at *4 (S.D.N.Y. June 6, 2022) (granting motion for compassionate release where "water leaking into [the defendant's unit and cell" made "[the defendant] and her fellow inmates ill"); *United States v. Olson*, No. 20-CR-00356, 2023 WL 2911037, at *4 (S.D.N.Y. Apr. 11, 2023) (denying motion for compassionate release where defendant did "not point[] to any symptoms he has personally experienced as a result of asbestos exposure" at FCI Danbury). And there is no evidence that FCI Danbury destroyed his sick calls or otherwise failed to provide him with needed health care. Finally, the allegation that sex-offenders are relegated to certain sections of the chow hall or excluded from certain programs is not an extraordinary and compelling circumstance.

C. **Mr. McCoy's Rehabilitation**

Mr. McCoy also contends that his "continued strides in rehabilitation," in conjunction with other factors, warrants compassionate release. ECF No. 81 at 8-9. Section 1B1.13(e) provides that "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason," but "rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances."

9

Mr. McCoy's record shows that he has taken admirable steps to rehabilitate himself, including completing the SKILLS program, the Traumatic Stress and Resilience Workshop, and several vocational programs including Lincoln Technical's electrician training program. ECF No. 81-3 at 2; ECF No. 81-8. In a letter to the Court, his father attests that he has "worked hard in prison to better himself," and "very much wants to work as an electrician." ECF No. 81-9 at 2. Letters from inmates who are incarcerated with Mr. McCoy, including two mentors in the SKILLS program, attest to progress Mr. McCoy has made in recent years and his remorse over the harm he caused. ECF No. 81-10. He has no disciplinary reports. ECF No. 83 at 24. Mr. McCoy's progress at the BOP has been longstanding and consistent, and I commend him for that and encourage him to continue in that vein.

But since "rehabilitation … is not, by itself, an extraordinary and compelling reason," I cannot reduce Mr. McCoy's sentence on the basis of his rehabilitation alone. And I do not find that Mr. McCoy's rehabilitation, in combination with other factors, is "similar in gravity" to the reasons for release outlined in Section 1B1.13(b).

D. Section 3553(a) Factors

Consideration of the Section 3553(a) factors also weighs against release in this case, although, admittedly, not as lopsidedly as when I denied the first motion for a sentence reduction because of Mr. McCoy's continued rehabilitation. The seriousness of Mr. McCoy's offense is discussed in detail in my prior ruling denying Mr. McCoy's motion for a sentence reduction and need not be repeated here. *See* ECF No. 80 at 4-5. But Mr. McCoy's second motion for a sentence reduction also argues that he will be more effectively rehabilitated if he can move closer to his family and receive additional mental health treatment in his community. ECF No. 81 at 12-14.  Mr. McCoy is not yet eligible for BOP's Sex Offender Treatment Program,

although he will be soon, "because BOP policy limits participation to inmates in the final 36- to 48- months of their sentencing." ECF No. 83 at 16.  Additionally, Mr. McCoy would need to leave FCI Danbury to complete the Sex Offender Treatment Program, and he would therefore lose access to the SKILLS program, which he claims he "needs … to operate safely in the prison environment." ECF No. 81 at 8. By contrast, if he is released early, Mr. McCoy's father attests that he would live with his parents in Houston, where he could "be financially supported" and complete "intensive counseling for sex addiction in the Houston area." *Id.*  Mr. McCoy's father intends to retire and make it his "mission to oversee [Mr. McCoy] while working with probation." *Id.* Mr. McCoy's father has found two "well respected sex offender treatment specialists in Houston," who Mr. McCoy "will work with." *Id.* at 12 n.1.

I do not believe that the possibility of receiving sex-offender treatment earlier outweighs the Section 3553(a) factors that counsel against reducing Mr. McCoy's sentence. There is still a need for continued incarceration to reflect the seriousness of the offense, a point supported by the gravity of Mr. McCoy's predatory conduct and the continued pain reflected in letters from victims, all of which oppose Mr. McCoy's motion.

For the foregoing reasons, Mr. Tyson's motion for a sentence reduction (ECF No. 81) is DENIED.

IT IS SO ORDERED.

Dated: Hartford, Connecticut
April 18, 2024

                                                        /s/
                                      Michael P. Shea, U.S.D.J.